# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARVIN EALY, JR.,
    Plaintiff,

v.                                                                                                        Case No. 22-C-0323

ANTHONY WAGNER, et al,
    Defendants.

## DECISION AND ORDER

Plaintiff Marvin Ealy, Jr., filed this action under 42 U.S.C. § 1983 against four police officers for the City of West Allis, Wisconsin. Ealy alleges that defendants violated the Fourth Amendment by unreasonably seizing and searching him during a traffic stop. Defendants have moved for summary judgment, and plaintiff did not respond to the motion within the time provided by the local rules. Because Ealy did not respond to the motion, by operation of the local rules, he has admitted defendants' proposed facts. Because those facts establish that defendants are entitled to judgment as a matter of law, defendants' motion for summary judgment will be granted.

## I. BACKGROUND

According to defendants' proposed findings of fact, Officer Anthony Wagner pulled Ealy over because he was operating a vehicle with expired registration. After noticing numerous "sovereign citizen" writings on Ealy's vehicle, Officer Wagner called for assistance. Several other officers responded to the call for backup, including defendants Adam Niemuth, Kevyn Mussatti, and Sergeant John Fabrycki. All officers were equipped with body worn cameras that recorded both audio and video of the incident. Those videos are in the record as Exhibits 1a, 1b, 1c, and 1d. (Def. Prop. Findings of Fact ¶¶ 5–7.)

During the traffic stop, Ealy remained behind the wheel of his car with the engine running. He refused to identify himself or produce his driver's license. The officers waited outside the vehicle for more than 30 minutes and repeatedly ordered Ealy to identify himself. Eventually, the officers told Ealy that he was under arrest for obstructing and ordered him to exit the vehicle. Ealy refused these commands. After several minutes of repeatedly ordering Ealy to exit the vehicle and Ealy's continued refusal to comply, Officer Mussatti used a tool to break the passenger window of Ealy's car. He then reached into the car to unlock it, which enabled officers on the driver side to open the driver side door, grasp Ealy, force him out of the car and onto the ground, and handcuff his hands behind his back. Officers then transported Ealy to the police department for identification and booking. Once officers identified him, they learned that his driver's license had been revoked. Ealy was issued citations for operating a vehicle with suspended registration and operating a motor vehicle with a revoked license.

Defendants filed their motion for summary judgment on November 2, 2022.[1] Plaintiff did not file a response to this motion within 30 days, which is the time allowed by the local rules. To this day, plaintiff has filed nothing since defendants filed their motion for summary judgment.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Defendants filed redundant motions for summary judgment on March 9, 2023, which I will deny as unnecessary.

56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Under the court's local rules governing motions for summary judgment, a movant must submit a statement of proposed material facts as to which the moving party contends there is no genuine issue. Civil L.R. 56(b)(1)(C). The party opposing summary judgment must respond to each proposed fact and, for those facts that the party denies, must specifically reference the affidavits, declarations, parts of the record, and other supporting materials that support the non-movant's position. Civil L.R. 56(b)(2)(B)(i). Any uncontroverted statements of fact are deemed admitted. Civil L.R. 56(b)(4).

In the present case, defendants filed proposed findings of undisputed fact, but plaintiff did not respond to those proposed findings and has not submitted any declaration, affidavit, or other evidence that a court may properly consider when deciding a motion for summary judgment.[2] Thus, pursuant to Civil Local Rule 56(b)(4), I will deem defendants' proposed facts undisputed.

Defendants' facts establish that Officer Wagner had probable cause to stop Ealy's vehicle for expired registration, which is a violation of Wisconsin law and punishable by citation. *See* Wis. Stat. § 341.03(1)–(2). Thus, the initial stop was not unreasonable under the Fourth Amendment. *See United States v. Reaves*, 796 F.3d 738, 741 (7th Cir. 2015)

---

[2] When defendants served their motion for summary judgment on plaintiff, they provided him with the warnings and copies of rules required by Civil Local Rule 56(a). (ECF No. 17 at 12–20 (Rule 56 warnings and rules) & ECF No. 19 (affidavit of defense counsel providing proof of service by mail on plaintiff).) Thus, plaintiff was on notice that his failure to respond to the motion would lead to the court's accepting defendants' evidence as true.

("An officer has probable cause for a traffic stop when she has an 'objectively reasonable' basis to believe a traffic law has been violated."). Further, Officer Wagner was permitted to demand that Ealy identify himself and produce his driver's license. *See* Wis. Stat. § 343.18(1); *State v. Ellenbecker*, 159 Wis. 2d 91, 96–98 (Ct. App. 1990). When Ealy refused to comply, the officers had probable cause to arrest him for obstructing. *See* Wis. Stat. § 946.41(1). Thus, the officers had authority to order Ealy to exit his vehicle so that they could effect the arrest.

Officers repeatedly informed Ealy that he was under arrest and ordered him to exit the car, and Ealy repeatedly refused. After approximately a half hour passed, the officers decided to forcibly extract Ealy from the vehicle to complete the arrest. The Fourth Amendment allows an officer to use some degree of physical coercion to make an arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Determining whether a use of force is reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The inquiry "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Here, the record shows that the officers used reasonable force to remove Ealy from the vehicle. They first attempted to convince Ealy to leave the car on his own by

4

giving repeated verbal commands. They gave him ample time to comply. Once it became clear that Ealy would not leave the vehicle on his own, an officer broke the car window that was on the opposite side of the car from Ealy and unlocked the car's doors. The officers next to Ealy then opened the driver side door, grasped Ealy, and forced him out of the car and onto the ground. The video shows that the officers did not use unnecessary force during this process and did not slam Ealy onto the ground. The officers then put Ealy's hands behind his back and cuffed them. Again, the video shows that the amount of force used to handcuff Ealy was minimal and reasonable. Thus, defendants are entitled to summary judgment on any claim for excessive force.

Once Ealy was arrested, the officers searched his person. This was a reasonable search incident to arrest, and therefore it did not violate the Fourth Amendment. *See, e.g., Virginia v. Moore*, 553 U.S. 164, 176–77 (2008).

Finally, defendants invoke the defense of qualified immunity. Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). More than a "mere defense to liability," it provides "immunity from suit." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The doctrine "is an affirmative defense." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). "[O]nce the defense is raised, it becomes the plaintiff's burden to defeat it." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). Whether qualified immunity applies turns on two questions: first, whether the facts presented, taken in the light most

5

favorable to the plaintiff, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam).

A constitutional right is clearly established if "the right in question [is] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015). "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, __ U.S.__, 139 S. Ct. 500, 503 (2019). This means that the court "analyze[s] whether precedent squarely governs the facts at issue, mindful that [a court] cannot define clearly established law at too high a level of generality." *Strand v. Minchuk*, 910 F.3d 909, 917 (7th Cir. 2018). The Supreme Court has explained that it is particularly important to adhere to this requirement in excessive force cases, as it can be difficult to determine how the law on excessive force will apply to a factual situation. *Smith v. Finkley*, 10 F.4th 725, 742 (7th Cir. 2021). "[T]he result depends very much on the facts of each case," *Emmons*, 139 S. Ct. at 503, and "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela v. Hughes*, __ U.S. __, 138 S. Ct. 1148, 1153 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)).

Because plaintiff has not filed a brief in opposition to defendants' motion for summary judgment, he has not carried his burden to show that existing cases put defendants on notice that their actions violated the Fourth Amendment. Accordingly, defendants are entitled to qualified immunity.

6

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for summary judgment (ECF No. 15) is **GRANTED**. The Clerk of Court shall enter final judgment.

**IT IS FURTHER ORDERED** that defendants' redundant motions for summary judgment (ECF Nos. 16, 18 & 20) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 10th day of March, 2023.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge